UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TOTAL TOXICOLOGY, LLC, a
Michigan Limited Liability Corporation,
       PLAINTIFF


-V-

GRAVITY BIOSCIENCES, LLC, a Florida
Limited Liability Corporation and
ANTHONY REMINGTON,
       DEFENDANTS.
_____
BEN M. GONEK(P43716)
LAW OFFICES OF BEN M. GONEK, PLLC
Attorney for Plaintiff
615 Griswold, Suite 1116
Detroit, Michigan 48226
313.963.3377
Ben@goneklaw.com
_____

**COMPLAINT AND JURY DEMAND**


     Now comes the Plaintiff TOTAL TOXICOLOGY, LLC by and through their attorney Ben M. Gonek and for this Complaint states the following:

**JURISDICTION AND PARTIES**

1. Plaintiff TOTAL TOXICOLOGY, LLC ("TOTAL TOX") is a limited liability company that is registered in the State of Michigan and does business in the State of Michigan.

2. Defendant GRAVITY BIOSCIENCES, LLC ("GRAVITY") is a limited liability company that is registered in the State of Florida and does some business in the State of Michigan.

3. Defendant ANTHONY REMINGTON ("REMINGTON") is an individual who is a resident of the State of Florida and who has been to the State of Michigan conducting business.

4. Plaintiff TOTAL TOX is a business that conducts medical laboratory testing and complies with all Federal, State, and Local laws.

5. Defendant GRAVITY is a business that provides sales representatives for medical laboratory testing facilities.

6. Defendant REMINGTON is the managing partner of Defendant GRAVITY.

7. The amount in controversy exceeds $75,000 as Plaintiff is seeking a judgment in excess of $700,000 against Defendants.

**FACTS GIVING RISE TO THIS COMPLAINT**

8. During the month of October 2015, REMINGTON, who is the managing partner of GRAVITY and representatives of TOTAL TOX signed a document entitled "Marketing and Sales Consultant Agreement."

9. The so called Marketing and Sales Consultant Agreement provided that GRAVITY was going to act as a sales representative for TOTAL TOX. The so called Marking and Sales Consultant Agreement was drafted by REMINGTON AND GRAVITY.

10. At the time the so called Marketing and Sales Consultant Agreement was electronically signed, TOTAL TOX was not aware that the terms of the said contract violated both Federal and State law.

11. Almost immediately after electronically signing said agreement and before any party began performing under the contract, TOTAL TOX learned the terms of the so called Marketing and Sales Consultant Agreement violated Federal and State law. TOTAL TOX informed both Defendants GRAVITY and REMINGTON about the fact that the Marketing and Sales Consultant Agreement contained illegal provisions. The parties then agreed to rescind the contract and not conduct business consistent with the terms set forth in the Marketing and Sales Consultant Agreement.

12. All parties to this lawsuit then verbally agreed to the following terms to conduct business until a formal contract was entered into:

    a. TOTAL TOX would pay a percentage commission on all submitted samples by GRAVITY in which TOTAL TOX WAS collected over $208.00 per sample;

    b. TOTAL TOX would not pay any commission and or compensate GRAVITY for any sample that was submitted that was paid by Medicare;

    c. TOTAL TOX would not pay any commission and or compensate GRAVITY for any sample that was not paid for by any source; and

    d. The compensation due to GRAVITY would be due and owing once a month after the collection reports from the previous month were compiled.

13. During this time period, REMINGTON kept representing and promising to Plaintiffs that GRAVITY and TOTAL TOX were going to form a partnership and REMINGTON would be providing more business to TOTAL TOX than they could handle.

14. REMINGTON also told TOTAL TOX to form this partnership TOTAL TOX would have to expand its laboratory and equipment which ultimately cost hundreds of thousands of dollars.

15. REMINGTON also represented to TOTAL TOX that GRAVITY was 100 percent committed to TOTAL TOX at the end of November 2015 and signed up nearly 25 accounts for TOTAL TOX.

16. Based or REMINGTON/GRAVITY representations TOTAL TOX purchased additional equipment and hired additional staff.

17. Through February 2016 and early March 2016, GRAVITY kept providing more samples to TOTAL TOX for analysis. During this time period, REMINGTON kept representing to TOTAL TOX that it was 100 percent committed to its business relationship.

18. Although REMINGTON made these representations on behalf of GRAVITY to TOTAL TOX, REMINGTON knew these representations were false as he directed all of GRAVITY'S

independent sales representatives to divert their samples to laboratories other than TOTAL TOX.

19. When representatives of TOTAL TOX learned that REMINGTON had directed the independent sales representatives to divert their samples to other companies, representatives of TOTAL TOX and REMINGTON renegotiated their business relationship

20. REMINGTON on behalf of GRAVITY agreed to a new compensation structure for samples submitted to TOTAL TOX on or about April 8, 2016.

21. In early May 2016, REMINGTON on behalf of GRAVITY met with representatives of TOTAL TOX.  All parties agreed that if TOTAL TOX compensated GRAVITY $150,000.00, REMINGTON would pay all the past due commissions owed by GRAVITY to its independent sales representatives and Lori Stalker for samples submitted to TOTAL TOX.  REMINGTON on behalf of GRAVITY also represented to TOTAL TOX that in exchange for said payment GRAVITY'S independent sales representatives would be free to deal with TOTAL TOX in any capacity that they wanted to deal with TOTAL TOX with no repercussions from GRAVITY. The parties also agreed that TOTAL TOX and GRAVITY were free to business or not to do business with one another if they so choose.

22. Within a short time of receiving said payment of $150,000, REMINGTON on behalf of GRAVITY once again instructed its independent sales representatives not to submit any samples to TOTAL TOX.  GRAVITY also threatened legal action against the independent sales representatives if they continued to submit samples to TOTAL TOX.   Contrary to the agreement, GRAVITY also threatened legal action against TOTAL TOX.

23. After paying REMINGTON and TOTAL TOX 150,000, TOTAL TOX has learned that REMINGTON was and is being sued for fraud by a former employer, representatives of GRAVITY were submitting false samples to other labs and facing legal action, REMINGTON

did not pay Lori Stalker as promised, and that REMINGTON is involved in a legal dispute with a partner of his in GRAVITY due to REMINGTON'S unethical business practices.  As a result of learning this information and GRAVITY's failure to comply with any past agreements, TOTAL TOX made the business decision not to conduct any future business with GRAVITY.

24. TOTAL TOX has also learned that REMINGTON made false representations to its independent sales representatives that TOTAL TOX did not compensate GRAVITY for samples submitted by GRAVITY'S independent sales representatives.

25. Because of REMINGTON/GRAVITY'S illegal and tortious actions, TOTAL TOX has sustained hundreds of thousands of dollars in losses.

## COUNT ONE

## PROMISSORY ESTOPPEL

26. Plaintiff incorporates all of the previously pled paragraphs.

27. Based on REMINGTON/GRAVITY'S promises that they were going to become business partners of TOTAL TOX, they (TOTAL TOX) expended hundreds of thousands of dollars to expand its laboratory's capabilities.

28. TOTAL TOX'S reliance on REMINGTON/GRAVITY'S representations were reasonable.

29. As a direct and proximate cause of the reasonable reliance on REMINGTON/GRAVITY'S representations, TOTAL TOX sustained hundreds of thousands of dollars in damages.

## COUNT TWO

## FRAUD

30. Plaintiff incorporates all of the previously pled paragraphs.

31. Based on REMINGTON/GRAVITY'S fraudulent representations that they were going to become business partners of TOTAL TOX, TOTAL TOX expended hundreds of thousands of dollars to expand its laboratory's capabilities.

32. TOTAL TOX'S reliance on REMINGTON/GRAVITY'S representations were reasonable.

33. As a direct and proximate cause of the reasonable reliance on REMINGTON/GRAVITY'S fraudulent representations, TOTAL TOX sustained hundreds of thousands of dollars in damages.

## COUNT THREE

### TORTIOUS INTERFERENCE WITH AN ADVANTAGEOUS BUSINESS RELATIONSHIP

34. Plaintiff incorporates all previously pled paragraphs.

35. Defendant REMINGTON/GRAVITY'S actions of directing all of their independent sales representatives to divert their samples to laboratories other than TOTAL TOX because TOTAL TOX was not paying for its samples when in fact TOTAL TOX was compensating GRAVITY for the samples submitted caused a decrease in samples submitted to TOTAL TOX.

36. Defendant REMINGTON/GRAVITY'S misrepresentations to its independent sales representatives was done so with the intent to interfere with an advantageous business relationship that TOTAL TOX had with independent sales representatives that were submitting samples to TOTAL TOX.

37. As a direct and proximate cause of REMINGTON/GRAVITY'S tortious interference with a business relationship TOTAL TOX had TOTAL TOX sustained damages.

## COUNT FOUR

### BREACH OF CONTRACT

38. Plaintiff incorporates all previously pled paragraphs.

39. TOTAL TOX, GRAVITY, and REMINGTON on behalf of GRAVITY entered into a contract where TOTAL TOX paid GRAVITY/REMINGTON $150,000 so that GRAVITY would: 1) compensate all independent sales representatives for samples submitted to TOTAL TOX; 2) allow TOTAL TOX to conduct business with any of GRAVITY'S current or former independent sales

representatives; and 3) allow any of GRAVITY's former or current independent representatives to conduct business with TOTAL TOX without any repercussions from GRAVITY.

40. GRAVITY AND REMINGTON breached this contract by failing to compensate all independent sales representatives for samples they submitted to TOTAL TOX, threaten TOTAL TOX with litigation for continuing to deal with GRAVITY'S former and current independent sales representatives, and threatening legal action against GRAVITY'S former and current independent sales representatives for their continued business dealings with TOTAL TOX.

41. As a direct and proximate cause of REMINGTON/GRAVITY'S breach of contract, TOTAL TOX sustained damages in excess of several hundred thousand dollars.

## COUNT FIVE

## FRAUD

42. Plaintiff incorporates all previously pled paragraphs.

43. GRAVITY, and REMINGTON on behalf of GRAVITY fraudulently represented to TOTAL TOX that if TOTAL TOX paid GRAVITY/REMINGTON $150,000 that GRAVITY would: 1) compensate all independent sales representatives for all samples previously submitted to TOTAL TOX; 2) allow and hold harmless TOTAL TOX from conducting business with any of GRAVITY'S current or former independent sales representatives; and 3) allow any of GRAVITY's former or current independent  representatives to conduct business with TOTAL TOX without any repercussions from GRAVITY.

44. GRAVITY AND REMINGTON knew these representations were false.

45. Despite said representations GRAIVITY failed to compensate all independent sales representatives for samples they submitted to TOTAL TOX, threaten TOTAL TOX with litigation for continuing to deal with GRAVITY'S former and current independent sales

representatives, and threatening legal action against GRAVITY'S former and current independent sales representatives for their continued business dealings with TOTAL TOX.

46. As a direct and proximate cause of this Fraud, TOTAL TOX sustained hundreds of thousands of dollars in damages.

Wherefore Plaintiff prays that this Court enter judgment in excess of 700,000 against these Defendants.

## JURY DEMAND

Now comes the Plaintiff and hereby demands a jury on all triable issues.

RESPECTFULLY SUBMITTED,

## *BEN M GONEK*

_____
BEN M. GONEK(P43716)
LAW OFFICES OF BEN M. GONEK, PLLC
Attorney for Plaintiff
615 Griswold, Suite 1116
Detroit, Michigan 48226
313.963.3377
Ben@goneklaw.com